IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01058-EWN-KMT

JOJO HAMLIN,

    Plaintiff,

v.

CHERYL SMITH, Assistant Warden,
CURTIS ROBINETTE, Programs Manager,
ALAN TRUJILLO, Security Captain,
RAE TIMMIE, Security Major,
LOU ARCHULETA, Warden, and
ARISTEDES ZAVARAS, Executive Director,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case involves a claim that Defendants violated Plaintiff's right to practice religion. This matter is before the court on "Defendants' Motion to Dismiss Plaintiff's Amended Complaint" (Doc. No. 28) filed October 12, 2007. Jurisdiction is premised upon 28 U.S.C. § 1983 (2007); 42 U.S.C. § 2000cc-1 (2007); and Colo. Rev. Stat. § 17-42-101 (2007).

### STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Prisoner Complaint and the parties' submissions with respect to this Recommendation. Plaintiff is incarcerated in the Fort Lyon Correctional Facility ("FLCF"). (Am. Prisoner Compl. [hereinafter "Compl."] [filed July 13, 2007].) Plaintiff JoJo Hamlin has named as Defendants Cheryl Smith, Associate Warden at

FLCF; Curtis Robinette, Programs Major at FLCF; Alan Trujillo, Security Captain at FLCF; Rae Timmie, Security Major at FLCF; Lou Archuleta, Warden at FLCF; and Aristedes Zavaras, Executive Director of the Colorado Department of Corrections ("CDOC"). (Compl. at 1–3.)

Plaintiff asserts he started practicing the Wiccan Faith in 2003, prior to his incarceration at FLCF. (*Id.* ¶ 1.) Plaintiff asserts eight claims, all related to his alleged inability to practice his religion. (*Id.* at 8–17.)

In Claim One, Plaintiff asserts he has been denied his constitutional right to practice his religion due to the Defendants' failure to post notice of the Wiccan services. (*Id.* at 8.) Plaintiff states Defendants Smith and Robinette were to ensure he had the opportunity to participate in the practice of his religion by publishing a schedule of the group services as required by AR 800-01. (*Id.* ¶¶ 33–34.)

In Claim Two, Plaintiff alleges he has been denied his constitutional right to practice his religion due to not having proper tools and supplies. (*Id.* at 8.) He states the oils and herbs he may purchase from CDOC are inadequate for use in Wiccan rituals. (*Id.* ¶ 37.) He asserts the CDOC will not permit him to have deity statues, a proper wand, a proper chalice, a proper cauldron bowl, a proper alter cloth, proper runes, a proper pendant, or a proper deck of Tarot cards. (*Id.* ¶¶ 47–80.)

In Claim Three, Plaintiff contends he has been placed under fear and threat that if he exercises his constitutional right to practice his religion he will suffer a penalty. (*Id.* at 12.) Plaintiff asserts Defendant Trujillo has led Plaintiff to believe he will be retaliated against for practicing his religion. (*Id.* ¶ 83.) Plaintiff alleges the Wiccan congregation was strip-searched

and given drug tests at the conclusion of one service. (*Id.* ¶ 19.) Plaintiff contends the Wiccan Faith Group is being treated differently than other religious groups at FLCF that have not been strip-searched or subjected to urinalysis at the conclusion of their services. (*Id.* ¶¶ 84, 86.)

In Claim Four, Plaintiff again asserts he has been denied his constitutional right to practice his religion due to being denied ritual tools and supplies. (*Id.* at 13.) Plaintiff states he has been denied chalk, candles, quarters, a wand, and charcoal, all used to practice his religion. (*Id.* ¶¶ 89–101.)

In Claim Five, Plaintiff alleges that to attend Wiccan services, he is required to endure the harsh, unhealthy weather conditions. (*Id.* at 14.) Plaintiff states the Wiccan Faith Group was given an indoor faith group area, but after a couple of meetings Defendants Trujillo and Robinette informed the group that they could no longer burn herbs and oils to cleanse the worship area. (*Id.* ¶¶ 105, 107). Plaintiff states the reason given was the state ban on smoking tobacco products inside public buildings. (*Id.* ¶ 108.) Plaintiff states his inability to tolerate the harsh weather conditions has forced him to miss several Wiccan services. (*Id.* ¶ 109.) Plaintiff asserts not having access to an "environmentally safe indoor Wiccan Service area, has denied [him] the ability to practice his religion." (*Id.* ¶ 110.)

In Claim Six, Plaintiff asserts he has been denied his constitutional right to practice his religion due to not being afforded sufficient service time. (*Id.* at 15.) Plaintiff states the CDOC does not identify a specific time for Wiccan services, thereby allowing Defendants Archuleta, Smith, and Robinette to regulate how much time the Wiccan Faith Group will have for their services. (*Id.* ¶¶ 112–114.)

In Claim Seven, Plaintiff alleges he is denied his constitutional right to practice his religion due to the high mark-up price CDOC places on Wiccan Faith Group items. (*Id.* at 16.) Plaintiff states he has compared the CDOC prices to those of a "reliable Pagan Wholesaler" and has found CDOC's price mark-up is seven times the market value. (*Id.* ¶ 121.) Plaintiff asserts this "price gouging" has made it impossible for him to purchase necessary ritual items. (*Id.* ¶ 122.)

In Claim Eight, Plaintiff alleges he is denied his constitutional right to practice his religion due to the low wages CDOC pays. (*Id.* at 17.) Plaintiff states he "has received $0.23 to $0.60 a day" for pay, and he is required to pay twenty percent of his monthly income to either child support or restitution. (*Id.* ¶¶ 125–126.) Plaintiff asserts this leaves him with approximately five to ten dollars to purchase hygiene items, stamps, and to pay for an occasional sick call. (*Id.* ¶ 127.) Therefore, Plaintiff asserts, he cannot afford to purchase ritual items. (*Id.* ¶ 128.)

Plaintiff seeks costs and fees, money damages, and injunctive relief. (*Id.* at 19.)

Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the bases that (1) Plaintiff's federal claims fail; and (2) Plaintiff's state law claims fail. (Defs.' Mot. to Dismiss Pl.'s Am. Compl. at 3–9. [hereinafter "Mot."] [filed October 12, 2007].)

**PROCEDURAL HISTORY**

Plaintiff's Amended Prisoner Complaint was filed on July 13, 2007. (Compl.) Defendants filed their motion to dismiss on October 12, 2007. (Mot.) No response or reply has been filed. This matter is ripe for review and recommendation.

**STANDARD OF REVIEW**

*1.* **Pro Se** *Plaintiff*

Because Plaintiff appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

## 2. *Lack of Subject Matter Jurisdiction*

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction to hear his claims.

## 3. *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

Thus, all well-pled factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). Further, the court is to make all reasonable inferences in the plaintiff's favor. *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002). In *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1974 (2007), the Supreme Court articulated a new "plausibility" standard, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

The issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *(overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Although a plaintiff does not need to state each element of his claim precisely, he must plead minimal factual allegations on those material elements that must be proved. *See* Fed. R. Civ. P. 8(a); *Hall*, 935 F.2d at 1110.

## ANALYSIS

### 1. *Eleventh Amendment Immunity*

To the extent Plaintiff is suing Defendants in their official capacities, Defendants claim they are immune. (Mot. at 3.) "[T]he Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). The CDOC is considered an agency of the State of Colorado. *See* Colo. Rev. Stat. § 24-1-128.5 (2007). States and state officials sued in their official capacities are not "persons" within the

meaning of § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Absent a waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court. *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). Such entities cannot be sued for monetary damages arising from alleged conduct which deprives a plaintiff of his or her civil liberties. The Eleventh Amendment confers total immunity from suit, not merely a defense to liability. *Ambus*, 995 F.2d at 994 (citation omitted).

It cannot be disputed that Defendants are state officials. Accordingly, to the extent that Plaintiff seeks damages, his claims against Defendants in their official capacities are properly dismissed with prejudice. Further, as to Claims Two, Six, Seven, and Eight, Plaintiff appears to be suing the CDOC only. Therefore, as the CDOC is an agency of the State of Colorado, and the Eleventh Amendment forbids a suit for damages against a state in federal court, Plaintiff's Claims Two, Six, Seven, and Eight should be dismissed with prejudice.

2. *Personal Participation*

Defendants assert that the claims against Defendants Smith, Timmie, Archuleta, and Zavaras fail for lack of participation. (Mot. at 4.) *Alvarado* provides that "courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." 493 F.3d at 1215 n.2. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her, and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Personal participation is an essential allegation in a § 1983 civil rights action. *Bennett v. Passic*, 545 F.2d 1260, 1262–63. *See Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988) (stating that before liability may be imposed, a supervisor must have "participated or acquiesced" in the conduct which constitutes a constitutional deprivation). To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

"A defendant cannot be liable under a respondeat superior theory in a section 1983 case." *Raile v. Ortiz*, No. 05-1345, 2006 WL 991102, at *2 (10th Cir. Apr. 17, 2006) (citing *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983)). *See also Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (supervisor status insufficient by itself to support liability under section 1983; rather, personal participation of defendant is essential).

As to Defendant Smith, the only allegations made by Plaintiff are contained in Claims One and Four. (Compl. ¶¶ 34, 99.) In Claim One, Plaintiff asserts Defendant Smith was to ensure he had an opportunity to participate in the practice of his Wiccan Faith Group, and that she failed to ensure notices were posted. (*Id*. ¶¶ 34, 35.) Assuming as true Plaintiff's assertion that under AR 800-01, the facility warden is required to publish a schedule of all group services and programs in the facility, Plaintiff's allegation against Defendant Smith is sufficient to allege personal participation. As to Claim Four, the only statement made regarding Defendant Smith is that she "contacted the recreation [d]epartment to locate the [missing] Wiccan charcoal." (*Id.* ¶

9

99.) This statement is not an allegation at all. In Claim Four, Plaintiff has failed to show that Defendant Smith caused the deprivation of a federal right and has failed to specify an affirmative link between any alleged constitutional violation and Defendant Smith's participation, control or direction, or failure to supervise. *Graham*, 473 U.S. at 166; *Butler*, 992 F.2d at 1055. Therefore, Claim Four is properly dismissed as to Defendant Smith.

As to Defendants Timmie, Archuleta, and Zavaras, Plaintiff has failed to allege any personal participation in any of his claims. In fact, Defendants Timmie and Zavaras are not named anywhere in Plaintiff's Complaint except to identify them as parties. (Compl. at 3.) Plaintiff does not make any allegations as to Defendant Warden except to state in the "Nature of the Case" section that, upon his arrival at FLCF, he made an inquiry of the warden (and other Defendants) as to when and where he could attend Wiccan services, to which he received no response. (*Id.* ¶ 4.) Therefore, Plaintiff has failed to show that Defendants Timmie, Archuleta, and Zavaras caused the deprivation of a federal right and has failed to specify an affirmative link between any alleged constitutional violation and their participation, control or direction, or failure to supervise. *Graham*, 473 U.S. at 166; *Butler*, 992 F.2d at 1055. Accordingly, Defendants Timmie, Archuleta, and Zavaras are properly dismissed as Defendants.

Having determined the only remaining claims are Claims One, Three, Four, and Five, the court will analyze the remaining defenses raised in the motion to dismiss.

### 3. *Religious Land Use and Institutionalized Persons Act*

Defendants assert that Plaintiff's claims against the defendants in their individual capacities are barred by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"),

42 U.S.C. § 2000cc-2(a). (Mot. at 6.) RLUIPA does not authorize suits against individual defendants. *Boles v. Neet*, 402 F. Supp. 2d 1237, 1240 (D. Colo. 2005). Moreover, the statute does not permit a claim for damages. *Boles*, 402 F. Supp. 2d at 1241. "Appropriate relief" under RLUIPA is limited to injunctive or declaratory relief. *Id.* Accordingly, Plaintiff's claims against Defendants in their individual capacities under RLUIPA and Plaintiff's damages claims under RLUIPA are properly dismissed with prejudice.

*4.     Prison Litigation Reform Act*

Defendants assert that Plaintiff is not entitled to compensatory damages because he did not allege a physical injury as required by the Prisoner Litigation Reform Act ("PLRA"). (Mot. at 5.) The PLRA provides in pertinent part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e) (2007).

Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion). Although section 1997e(e) bars recovery of mental or emotional injury damages for failure to allege physical injury, it does not bar recovery of punitive damages, declaratory relief, or nominal damages. *Id.* at 881 (noting that punitive damages may be awarded for constitutional violations without a showing of compensable injury); *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 808 (10th Cir. 1999).

In this case, Plaintiff's only reference made to any damages is in the claim for relief, where Plaintiff asks for monetary fees to be awarded for "pain and suffering he has endured." (Compl. at 19.) Plaintiff has failed to make any sufficient allegation of physical injury sufficient to avoid the limitation contained in § 1997e(e). *Perkins*, 165 F. 3d at 807. Therefore, Plaintiff is barred from obtaining compensatory damages for the asserted constitutional violations associated with only mental or emotional injuries. *Searles*, 251 F.3d at 876 (holding the plain language of § 1997e(e) forecloses award of compensatory damages for substantive constitutional violation, regardless of the rights asserted, if the only injuries are mental or emotional).

However, nominal damages are available for the violation of certain "absolute" constitutional rights without any showing of actual injury. *Perkins*, 165 F.3d at 808 n.6 (citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978). The Tenth Circuit has found that deprivation of a constitutional right constitutes injury and stated, "'[N]ominal damages, and not damages based on some undefinable value of infringed rights, are the appropriate means of vindicating rights whose deprivation has not caused actual, provable injury.'" *Lippoldt v. Cole*, 468 F.3d 1204, 1221 (10th Cir. 2006) (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n.11 (1986). "Moreover, the rule seems to be that an award of nominal damages is mandatory upon a finding of a constitutional violation." *Searles*, 251 F.3d at 879. Although Plaintiff did not expressly seek an award of nominal damages, the pro se action can be generously construed to assert such a demand for relief given the plaintiff's failure to particularize his request for relief.

Accordingly, if it is determined Plaintiff has established a constitutional violation, Plaintiff may be entitled to an award of nominal damages in the sum of one dollar. *Lippoldt*, 468

12

F.3d at 1221; *see also Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1257–1258 (10th Cir. 2004).

5. *Colorado Governmental Immunity Act*

Defendants assert that Plaintiff's state claim is barred by the Colorado Governmental Immunity Act ("CGAI"), C.R.S. § 24–10–108. The notice provisions of the CGIA apply when federal courts hear Colorado tort claims under supplemental jurisdiction. *Renalde v. City & County of Denver, Colo.*, 807 F. Supp. 668, 675 (D. Colo. 1992) (holding that Colorado tort claims brought by private plaintiff under pendent jurisdiction are subject to the notice provisions of the CGIA as a jurisdictional prerequisite to suit). Sub-section one of the CGIA notice provision reads:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

C.R.S. § 24-10-109(1). The Colorado Supreme Court has determined that written notice is provided pursuant to Section 24-10-109(1) only when that written notice contains a demand for monetary damages. *Mesa County Valley School Dist. No. 51 v. Kelsey*, 8 P.3d 1200, 1205 (Colo. 2000). Thus, if Plaintiff failed to submit a written demand for monetary damages within 180 days after he discovered, or should have discovered, his injury, this omission operates as a jurisdictional bar to the lawsuit.

13

"Colorado courts strictly construe section 24-10-109(1) and consistently hold that '[c]omplying with the notice of claim [as set forth in section 24-10-109(1)] is a jurisdictional prerequisite to suit.'" *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 839 (10th Cir. 2003) (citing *Gallagher v. Bd. of Trs. for Univ. of N. Colo.*, 54 P.3d 386, 391 (Colo. 2002). Colorado courts describe section 24-10-109(1) as a non-claim statute, "meaning that failure to comply with the 180-day period is an absolute bar to suit." *Gallagher*, 54 P.3d at 393.

In addition to construing its terms strictly, Colorado courts consistently hold that a plaintiff must plead compliance with the CGIA's notice provisions in the complaint to avoid dismissal. *See Kratzer v. Colorado Intergovernmental Risk Share Agency*, 18 P.3d 766, 769 (Colo. App. 2000) ("[A] claimant must allege in his or her complaint that the claimant has complied with the jurisdictional prerequisite of filing of a notice of claim.") (citations omitted). "When a plaintiff fails to plead compliance with the CGIA, and a court addresses the case in the context of a motion to dismiss, the court must accept as a matter of 'fact' that the plaintiff failed to comply with the notice provisions. This lack of compliance, then, is a jurisdictional issue." *Aspen Orthopaedics*, 353 F.3d at 840.

In this case, Plaintiff has failed to plead compliance with the CGIA's notice provisions in his Complaint. Furthermore, Plaintiff failed to respond to the motion to dismiss and has not demonstrated any compliance with the CGIA's notice requirement. Therefore, this court lacks jurisdiction over Plaintiff's state law claims, and they must be dismissed with prejudice.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendants' Motion to Dismiss Plaintiff's Amended Complaint" (Doc. No. 28) be GRANTED in part and DENIED in part, as follows:

1. Plaintiff's claims against all Defendants in their official capacities should be dismissed with prejudice as being barred by the Eleventh Amendment;

2. Plaintiff's Claims Two, Six, Seven, and Eight should be dismissed with prejudice as being barred by the Eleventh Amendment;

3. Plaintiff's claims against Defendant Smith in her individual capacity in Claim Four should be dismissed for failure to allege personal participation;

4. Defendants Timmie, Archuleta, and Zavaras should be dismissed as Defendants for Plaintiff's failure to allege personal participation;

5. Plaintiff's claims against all defendants in their individual capacities under RLUIPA should be dismissed with prejudice;

6. Plaintiff's damages claims under RLUIPA should be dismissed with prejudice;

7. Plaintiff's state law claims should be dismissed with prejudice for lack of jurisdiction; and

8. Defendants' Motion is DENIED as to Plaintiff's constitutional violation Claims, One, Three, Four, and Five, to the extent he is able to establish them, as he may be entitled to injunctive relief and an award of nominal damages in the sum of one dollar.

**ADVISEMENT TO THE PARTIES**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the

ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of August, 2008.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge