IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 07-cv-01058-CBS-KMT

JOJO HAMLIN,
    Plaintiff,
v.

CHERYL SMITH, Assistant Warden,
CURTIS ROBINETTE, Programs Manager,
ALAN TRUJILLO, Security Captain, and
    Defendants.[1]
_____

MEMORANDUM OPINION AND ORDER
_____

This civil action comes before the court on Plaintiff Mr. Hamlin's "Motion for Leave to File an Amended Complaint" (filed February 11, 2010) (doc. # 107). On October 8, 2009, the above-captioned case was referred to Magistrate Judge Craig B. Shaffer to handle all dispositive matters including trial and entry of a final judgment in accordance with 28 U.S.C. 636(c), Fed. R. Civ. P. 73, and D.C. COLO. LCivR 72.2. (*See* doc. # 91). The court has reviewed the Motion and the proposed "Prisoner's Second Amended Complaint" (doc. # 107-2), Defendants' Response (filed March 4, 2009) (doc. # 109), Mr. Hamlin's "Rebuttal" ("Reply") (filed March 12, 2009) (doc. # 110), the entire case file, and the applicable law and is sufficiently advised in the premises.

---

[1] The Amended Complaint (doc. # 11), as modified by the court's Order (doc. # 54) is the current operative pleading.

1

I. Statement of the Case

The events forming the basis of this civil action occurred at the Fort Lyon Correctional Facility ("FLCF") of the Colorado Department of Corrections. Mr. Hamlin is currently incarcerated in the Bent County Correctional Facility. Proceeding *pro se*, Mr. Hamlin filed his initial 19-page Complaint on or about May 21, 2007 pursuant to 42 U.S.C. § 1983, alleging eight claims against Cheryl Smith, Curtis Robinette, Alan Trujillo, Rae Timmie, Daniel Barbero, Lou Archuleta, and Aristedes Zavaras. (*See* doc. # 3). At the court's direction (*see* doc. # 10), Mr. Hamlin filed his 25-page Amended Complaint on July 13, 2007, against all of the same Defendants except Defendant Barbero. (*See* doc. # 11). Mr. Hamlin seeks various forms of relief, including monetary damages "for pain and suffering." (*See id.*). On August 27, 2008, Magistrate Judge Tafoya filed a "Recommendation of United States Magistrate Judge." (*See* doc. # 53). After no party objected, on September 10, 2008, the District Judge ordered:

> 1. The recommendation is ACCEPTED.
> 2. Defendants' Motion to Dismiss Plaintiff's Amended Complaint (#28, filed October 12, 2007) is GRANTED in part and DENIED in part.
> 3. Plaintiff's claims against all Defendants in their official capacities are dismissed with prejudice as being barred by the Eleventh Amendment;
> 4. Plaintiff's Claims Two, Six, Seven, and Eight are dismissed with prejudice as being barred by the Eleventh Amendment;
> 5. Plaintiff's claims against Defendant Smith in her individual capacity in Claim Four is dismissed for failure to allege personal participation;
> 6. Defendants Timmie, Archuleta, and Zavaras are dismissed as Defendants for Plaintiff's failure to allege personal participation;
> 7. Plaintiff's claims against all defendants in their individual capacities under RLUIPA are dismissed with prejudice;
> 8. Plaintiff's damages claims under RLUIPA are dismissed with prejudice;
> 9. Plaintiff's state law claims are dismissed with prejudice for lack of jurisdiction; and
> 10. Defendants' Motion is DENIED as to Plaintiff's constitutional violation claims, One, Three, Four, and Five, to the extent he is able to establish them, as he may be entitled to injunctive relief and an award of nominal damages in the

2

sum of one dollar.

(*See* "Order Accepting Magistrate Judge's Recommendation" (doc. # 54)).

On September 29, 2008, Magistrate Judge Tafoya established the following scheduling order in this case:

> File Amended Complaint: November 20, 2008
> Discovery Cut-off: March 27, 2009
> Dispositive Motion Deadline: April 27, 2009
> Expert Witness Disclosure: January 15, 2009
> Rebuttal Expert Witness Disclosure: February 15, 2009

(*See* Courtroom Minutes/Minute Order (doc. # 59)). On October 8, 2009, the district judge "waive[d] the deadline for consenting to Magistrate Judge jurisdiction under D.C. COLO. LCivR 72.2(D)" and the case was drawn and referred to the "Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c) and D.C. COLO. LCivR 72.2." (*See* doc. # 91).

Without seeking leave to amend his pleading, on November 19, 2008 Mr. Hamlin filed a 22-page "Prisoner's Second Amended Complaint" pursuant to 42 U.S.C. § 1983 alleging seven claims against Cheryl Smith, Curtis Robinette, Alan Trujillo, Rae Timmie, Lou Archuleta, Aristedes Zavaras, and Anthony DeCesaro, seeking various forms of relief, including damages. (*See* doc. # 69). On January 11, 2010, the court ordered the "Prisoner's Second Amended Complaint" stricken for failure to seek leave from the court pursuant to Fed. R. Civ. P. 15. (*See* Courtroom Minutes/Minute Order (doc. # 106)). *See also* Fed. R. Civ. P. 15(a)(2) ("a party may amend its pleading only with the opposing party's consent or the court's leave"). The court permitted Mr. Hamlin to file a motion for leave to file a second amended complaint on or before February 11, 2010. (*See id.*).

On February 11, 2010, Mr. Hamlin filed the instant Motion for Leave to File an Amended Complaint, attaching a copy of his 22-page proposed "Prisoner's Second Amended Complaint" ("SAC"). (*See* docs. # 107, # 107-2). In his proposed SAC, Mr. Hamlin alleges seven claims pursuant to § 1983 against Cheryl Smith, Curtis Robinette, Alan Trujillo, Rae Timmie, Lou Archuleta, Aristedes Zavaras, and Anthony DeCesaro, seeking various forms of relief, including damages. (*See* doc. # 107-2). Mr. Hamlin alleges denial of his right to practice his religion, in violation of his rights under the United States Constitution, the Colorado Constitution, the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4, and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5.[2] (*See* doc. # 107-2 at p. 4 of 22).

Mr. Hamlin alleges he started practicing the Wiccan Faith in 2003, prior to his incarceration at FLCF. (*See* doc. # 107-2 at p. 4 of 22). Mr. Hamlin's seven claims all relate to his alleged inability to practice his religion. (*See* doc. # 107-2). In Claim One, Mr. Hamlin alleges he "has been denied his constitutional right to practice his religion due to the Defendants' failure to post notice" of the Wiccan services. (*See id.* at p. 8 of 22). Mr. Hamlin alleges that Defendants Smith and Robinette were to ensure he had the opportunity to participate in the practice of his religion by publishing a schedule of the group services as required by AR 800-01. (*See id.* at ¶¶ 33-34). In Claim Two, Mr.

---

[2] While Mr. Hamlin invokes RFRA, it does not apply to state actors such as the Defendants here. On June 25, 1997, the Supreme Court invalidated RFRA as it applied to the states, holding that Congress had exceeded its powers under the Fourteenth Amendment's enforcement clause. *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997). In September 2000, Congress responded with RLUIPA, 42 U.S.C. §§ 2000cc to cc-5. RLUIPA does not change the holding of *City of Boerne*, 521 U.S. at 507.

Hamlin alleges he "has been denied his constitutional right to practice his religion due to not having proper tools and supplies." (*See id.* at p. 8 of 22). He alleges that the oils and herbs he may purchase from CDOC are inadequate for use in Wiccan rituals and that the CDOC will not permit him to have deity statues, a proper wand, a proper chalice, a proper cauldron bowl, a proper alter cloth, proper runes, a proper pendant, or a proper deck of Tarot cards. (*See id.* at ¶¶ 37, 47–80f.)

In Claim Three, Mr. Hamlin alleges he "has been placed under fear and threat that if he exercises his constitutional right to practice his religion he will suffer a penalty." (*See* doc. # 107-2 at p. 13 of 22). Mr. Hamlin asserts that Defendant Trujillo led him to believe he will be retaliated against for practicing his religion. (*See id.* at ¶ 83). Mr. Hamlin alleges the Wiccan congregation was strip-searched and given drug tests at the conclusion of one service. (*See* doc. # 107-2 at ¶ 19). Mr. Hamlin contends the Wiccan Faith Group is being treated differently than other religious groups at FLCF that have not been strip-searched or subjected to urinalysis at the conclusion of their services. (*See id.* at ¶¶ 84, 86).

In Claim Four, Mr. Hamlin again alleges he "has been denied his constitutional right to practice his religion due to being denied ritual tools and supplies." (*See* doc. # 107-2 at p. 15 of 22). Mr. Hamlin states he has been denied chalk, candles, quarters, a wand, and charcoal, all used to practice his religion. (*See id.* at ¶¶ 89–101). In Claim Five, Mr. Hamlin alleges that to attend Wiccan services, he is required "to endure the harsh, unhealthy weather conditions." (*See id.* at p. 17 of 22). Mr. Hamlin alleges that the Wiccan Faith Group was given an indoor faith group area, but after a couple of meetings Defendants Trujillo and Robinette informed the group that they could no

longer burn herbs and oils to cleanse the worship area. (*See id.* at ¶¶ 105, 107). Mr. Hamlin states his inability to tolerate the harsh weather conditions has forced him to miss several Wiccan services and denied him the ability to practice his religion. (*See id.* at ¶¶ 109, 110).

In Claim Six, Mr. Hamlin alleges he has been "denied his constitutional right to practice his religion due to the high mark up price CDOC places on Wicca [sic] Faith Group items." (*See* doc. # 107-2 at p. 18 of 22). Mr. Hamlin states he has compared the CDOC prices to those of a "reliable Pagan Wholesaler" and has found "CDOC's price markup is seven times the market value." (*See id.* at ¶ 121). Mr. Hamlin asserts this "price gouging has made it impossible for [him] to purchase necessary ritual items." (*See id.* at ¶ 122). In Claim Seven, Mr. Hamlin alleges he "is denied his constitutional right to practice his religious beliefs due to the low wages CDOC pays." (*See id.* at p. 19 of 22). Mr. Hamlin states he "has received $0.23 to $0.60 a day" for pay, and he is required to pay twenty percent of his monthly income to either child support or restitution. (*See id.* at ¶¶ 125–126). Mr. Hamlin alleges this leaves him with approximately five to ten dollars to purchase hygiene items, stamps, and to pay for an occasional sick call and unable to afford ritual items. (*See id.* at ¶¶ 127-128).

Defendants oppose Mr. Hamlin's Motion for failure to demonstrate good cause pursuant to Fed. R. Civ. P. 16(b) and 15(a), based on failure to show good cause, untimeliness, and futility.

II. Standard of Review

As Mr. Hamlin's motion was made after the deadline for amendment of pleadings

6

(*see* Courtroom Minutes/Minute Order (doc. # 59)), the court applies the following analysis in deciding whether to allow the amendments:

> Where, as here, a motion to amend the pleadings . . . is filed after the scheduling order deadline, a "two-step analysis" is required. Once a scheduling order's deadline for amendment has passed, a movant must first demonstrate to the court that it has "good cause" for seeking modification of the scheduling deadline under Rule 16(b). If the movant satisfies Rule 16(b)'s "good cause" standard, it must then pass the requirements for amendment under Rule 15(a). . . .
>
> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that the scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension."

*Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (internal quotation marks and citations omitted). This "good cause" requirement reflects the important role a scheduling order plays in the court's management of its docket. *Cf. Washington v. Arapahoe County Department of Social Services,* 197 F.R.D. 439, 441 (D. Colo. 2000) (noting that a "scheduling order is an important tool necessary for the orderly preparation of a case for trial"); *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) ("a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril"); *Rouse v. Farmers State Bank of Jewell, Iowa*, 866 F. Supp. 1191, 1198 (N.D. Iowa 1994) (scheduling orders and their enforcement provide essential mechanism to ensure that trial preparation proceeds in an efficient, just and certain manner).

The second step is consideration of whether Mr. Hamlin has satisfied the

7

standard for amendment of pleadings required under Fed. R. Civ. P. 15(a). A court should allow a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a). Such a grant of leave is within the discretion of the trial court. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). A district court may deny leave to amend where amendment would be futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999). The district court is justified in denying a "motion to amend if the proposed amendment could not have withstood a motion to dismiss or otherwise failed to state a claim." *Schepp v. Fremont County, Wyo.*, 900 F.2d 1448, 1451 (10th Cir. 1990). *See also Sheldon v. Vermonty*, 204 F.R.D. 679, 682 (D. Kan. 2001) (to determine whether a proposed amendment is futile, the court must analyze the proposed amendment as if it were before the court on a Rule 12(b)(6) motion). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

III. Analysis

Mr. Hamlin has not met either step of the two-step analysis for a motion to amend the pleadings filed after the scheduling order deadline. Mr. Hamlin's proposed amendment is no more than an attempt to reinsert previously dismissed claims. Mr.

Hamlin argues only that his SAC has cured the deficiency of failure to allege personal participation. (*See* docs. # 107, # 110). He has not specifically addressed the several additional grounds for the court's September 10, 2008 Order that dismissed all but Claims One, Three, Four, and Five against Defendants Smith, Robinette, and Trujillo. (*See* doc. # 54). Mr. Hamlin provides no basis for reinserting claims that have been previously determined.

Nor does Mr. Hamlin's proposed amended pleading cure the deficiency of failure to allege personal participation. Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim."). A defendant may not be held liable merely because of his or her supervisory position. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). *See also Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Mr. Hamlin has alleged additional facts that purportedly support personal

9

participation in the alleged constitutional violations by dismissed Defendants Timmie, Archuleta, and Zavaras. (*See* doc. # 107-2 at pp. 12-14, 16, 19, ¶¶ 80a-80f, 87a-87g, 102a-102d, 123a-123b). Mr. Hamlin also adds allegations against a new Defendant, DeCesaro. (*See id.*). Mr. Hamlin alleges that he sent "kites" and/or grievances to these individuals and they failed to act upon them. (*See id.*). However, "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted). Mr. Hamlin's added allegations against Defendant Zavaras amount to no more than *respondeat superior* liability. (*See* doc. 3 107-2 at ¶ 80e). There is no *respondeat superior* liability under § 1983. *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006). *See also Hernandez v. Keane*, 341 F.3d 137, (2d Cir. 2003) ("supervisor liability in a §1983 action . . . cannot rest on respondeat superior"). Mr. Hamlin alleges no facts justifying reinstatement of the dismissed claims and Defendants or how these claims would survive a motion to dismiss. *See, e.g., Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir. 1983) ("It is not an abuse of discretion to refuse a request to amend when the proffered amendment merely restates the same facts using different language, or reasserts a claim previously determined."). Further, the Defendants would suffer undue prejudice from Mr. Hamlin's proposed amendment that attempts to reinstate claims and parties that have already been examined by the court and dismissed.

To the extent that Mr. Hamlin's proposed amendment addresses Defendants Smith, Robinette, and Trujillo, the case is already proceeding on the Amended Complaint on Claims One, Three, Four, and Five against them. Mr. Hamlin's new

10

allegations do not sufficiently alter his claims against them to necessitate an amended pleading. As Mr. Hamlin has failed to meet the good cause standard of 16(b) for amendment of his pleadings after the scheduling deadline or the standard for amendment of pleadings required under Fed. R. Civ. P. 15(a), his Motion to Amend is properly denied.

Accordingly, IT IS ORDERED that:

1. Mr. Hamlin's "Motion for Leave to File an Amended Complaint" (filed February 11, 2010) (doc. # 107) is DENIED. This civil action shall proceed on the Amended Complaint (doc. # 11) to the extent that Mr. Hamlin may be entitled to injunctive relief and/or an award of nominal damages on the following claims against the following Defendants:

    a. Claim One against Defendants Robinette and Trujillo in their individual capacities;

    b. Claim Three against Defendants Smith, Robinette, and Trujillo in their individual capacities;

    c. Claim Four against Defendants Smith, Robinette, and Trujillo in their individual capacities; and

    d. Claim Five against Defendants Smith, Robinette, and Trujillo in their individual capacities.

    e. Pursuant to this Order and the court's Order dated September 10, 2009 (*see* doc. # 54 at ¶ 6), Defendants Timmie, Archuleta, Zavaras, and DeCesaro are not parties in the case.

2. **A Status Conference shall be held on Tuesday April 27, 2010 at 9:15 a.m.**, in Courtroom A-402, Fourth Floor, of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado to review the status and further scheduling of the case.

3. Mr. Hamlin and/or his case manager shall arrange for his participation in the Status Conference **on Tuesday April 27, 2010 at 9:15 a.m.** via telephone and shall call (303) 844-2117 at the scheduled time.

DATED at Denver, Colorado, this 24th day of March, 2010.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge