IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 07-cv-01058-CBS-KMT

JOJO HAMLIN,
        Plaintiff,
v.

CHERYL SMITH, Assistant Warden,
CURTIS ROBINETTE, Programs Manager,
ALAN TRUJILLO, Security Captain, and
        Defendants.
_____

MEMORANDUM OPINION AND ORDER
_____

This civil action comes before the court on "Defendants' Renewed Motion for

Summary Judgment" (filed April 30, 2010) (doc. # 115). On October 8, 2009, the

above-captioned case was referred to Magistrate Judge Craig B. Shaffer to handle all

dispositive matters including trial and entry of a final judgment in accordance with 28

U.S.C. 636(c), Fed. R. Civ. P. 73, and D.C. COLO. LCivR 72.2. (*See* doc. # 91). The

court has reviewed the Motion, the exhibits and affidavits, the entire case file, and the

applicable law and is sufficiently advised in the premises.


I.      Statement of the Case

        The events forming the basis of this civil action occurred at the Fort Lyon

Correctional Facility ("FLCF") of the Colorado Department of Corrections. Mr. Hamlin is

currently incarcerated in the Bent County Correctional Facility ("BCCF"). Proceeding

*pro se*, Mr. Hamlin filed his initial 19-page Complaint on or about May 21, 2007

pursuant to 42 U.S.C. § 1983, alleging eight claims against Cheryl Smith, Curtis Robinette, Alan Trujillo, Rae Timmie, Daniel Barbero, Lou Archuleta, and Aristedes Zavaras.  (*See* doc. # 3).  At the court's direction (*see* doc. # 10), Mr. Hamlin filed his 25-page Amended Complaint on July 13, 2007, against all of the same Defendants except Defendant Barbero.  (*See* doc. # 11).  Mr. Hamlin alleged denial of his right to practice his religion, in violation of his rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*., the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5, the Colorado Constitution, and the United States Constitution.[1]  Mr. Hamlin seeks various forms of relief, including monetary damages "for pain and suffering."  (*See id.*).

On August 27, 2008, Magistrate Judge Tafoya filed a "Recommendation of United States Magistrate Judge" on Defendants' Motion to Dismiss Plaintiff's Amended Complaint.  (*See* doc. # 53).  After no party objected, on September 10, 2008, District Judge Nottingham granted in part and denied in part Defendants' Motion.  District Judge Nottingham dismissed with prejudice Mr. Hamlin's claims against all Defendants

---

[1]    RFRA does not apply to state actors such as the Defendants here.  On June 25, 1997, the Supreme Court invalidated RFRA as it applied to the states, holding that Congress had exceeded its powers under the Fourteenth Amendment's enforcement clause.  *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997).  In September 2000, Congress responded with RLUIPA, 42 U.S.C. §§ 2000cc to cc-5.  RLUIPA does not change the holding of *City of Boerne*, 521 U.S. at 507.

To the extent Mr Hamlin alleges violation of the Colorado Constitution, "Section 1983 does not . . . provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law."  *Jones v. City & County of Denver, Colo.*, 854 F.2d 1206, 1209 (10th Cir.1988); *see also Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir.1994) (It is well established that a claim cannot be brought under § 1983 for an alleged violation of state law.).

in their official capacities as barred by the Eleventh Amendment, dismissed with prejudice Claims Two, Six, Seven, and Eight as barred by the Eleventh Amendment, dismissed Defendant Smith in her individual capacity from Claim Four for failure to allege personal participation, dismissed Defendants Timmie, Archuleta, and Zavaras from the Amended Complaint for failure to allege personal participation, dismissed with prejudice all Defendants in their individual capacities under RLUIPA, dismissed with prejudice Mr. Hamlin's damages claims under RLUIPA, dismissed with prejudice Mr. Hamlin's state law claims for lack of jurisdiction, and permitted this action to proceed as to Claims One, Three, Four, and Five for injunctive relief and an award of nominal damages in the sum of one dollar pursuant to § 1983 and RLUIPA. (*See* "Order Accepting Magistrate Judge's Recommendation" (doc. # 54)).

On October 31, 2008, upon the resignation of District Judge Nottingham, this case was reassigned to District Judge Krieger. (*See* doc. # 65). On October 8, 2009, District Judge Krieger determined that while the parties' consent to the availability of a Magistrate Judge to exercise jurisdiction was untimely, "the parties have unanimously expressed their desire to proceed before a Magistrate Judge." (*See* doc. # 91). Judge Krieger referred this case to Magistrate Judge Watanabe "for all purposes pursuant to 28 U.S.C. § 636(c) and D.C. COLO. LCivR 72.2." (*See id.*). On October 27, 2009, Magistrate Judge Watanabe issued his "Order Directing Reassignment to Another Magistrate Judge," based on his assignment to the case between July 26, 2007 and January 9, 2008 (*See* doc. # 95). On October 28, 2009, the case was reassigned to Magistrate Judge Shaffer. This civil action is proceeding on the Amended Complaint (doc. # 11), as modified by the court's Order (doc. # 54), to the extent that Mr. Hamlin

3

may be entitled to injunctive relief and/or an award of nominal damages pursuant to §

1983 based on his First Amendment rights against Defendants in their individual

capacities and pursuant to RLUIPA against Defendants in their official capacities on: (1)

Claim One against Defendants Robinette and Trujillo; (2) Claim Three against

Defendants Smith, Robinette, and Trujillo; (3) Claim Four against Defendants Robinette

and Trujillo; and (4) Claim Five against Defendants Smith, Robinette, and Trujillo.

Mr. Hamlin alleges he started practicing the Wiccan Faith in 2003, prior to his

incarceration at FLCF.  (*See* Amended Complaint ("AC") (doc. # 11) at p. 4 of 25).  Mr.

Hamlin's remaining claims all relate to his inability to practice his religion, alleging

violation of his rights under the First Amendment and RLUIPA.  (*See* doc. # 11).  In

Claim One, Mr. Hamlin alleges he "has been denied his constitutional right to practice

his religion due to the Defendants' failure to post notice" of the Wiccan services.  (*See*

*id*. at p. 8 of 25).  Mr. Hamlin alleges that Defendants Smith and Robinette were to

ensure he had the opportunity to participate in the practice of his religion by publishing

a schedule of the group services as required by AR 800-01.  (*See id*. at ¶¶ 34-35).

In Claim Three, Mr. Hamlin alleges he "has been placed under fear and threat

that if he exercises his constitutional right to practice his religion he will suffer a

penalty."  (*See* doc. # 11 at p. 12 of 25).  Mr. Hamlin asserts that Defendant Trujillo led

him to believe he will be retaliated against for practicing his religion.  (*See id*. at ¶ 83).

Mr. Hamlin alleges the Wiccan congregation was strip-searched and given drug tests at

the conclusion of a service on September 16, 2006.  (*See id*. at ¶ 19).  Mr. Hamlin

contends the Wiccan Faith Group is being treated differently than other religious groups

4

at FLCF that have not been strip-searched or subjected to urinalysis at the conclusion of their services. (*See id*. at ¶¶ 84, 86).

In Claim Four, Mr. Hamlin alleges he "has been denied his constitutional right to practice his religion by being denied ritual tools and supplies." (*See* doc. # 11 at p. 13 of 25). Mr. Hamlin states he has been denied chalk, candles, quarters, a wand, and charcoal, all used to practice his religion. (*See id*. at ¶¶ 89–99).

In Claim Five, Mr. Hamlin alleges that to attend Wiccan services, he is required "to endure the harsh, unhealthy weather conditions." (*See id*. at p. 14 of 25). Mr. Hamlin alleges that the Wiccan Faith Group was given an indoor faith group area, but after a couple of meetings Defendants Trujillo and Robinette informed the group that they could no longer burn herbs and oils indoors. (*See id*. at ¶¶ 105, 107). Mr. Hamlin states his inability to tolerate cold has forced him to miss several Wiccan services and denied him the ability to practice his religion. (*See id*. at ¶¶ 109, 110).

Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56 on all of Mr. Hamlin's remaining claims.


II.    Standard of Review

> Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.
> To meet the burden of production required to support summary judgment, the movant need only point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law. Summary judgment will then lie if the movant establishes entitlement to judgment as a matter of law given [the] uncontroverted, operative facts. . . . Factual disputes that are irrelevant or unnecessary will not be counted.

> Where a movant has met the initial burden required to support summary judgment, the non-movant then must either establish the existence of a triable issue of fact under Fed.R.Civ.P. 56(e) or explain why he cannot . . . under Rule 56(f). Conclusory allegations made by a non-movant will not suffice. Instead, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein.

*Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 674-75 (10th Cir. 2002) (citations omitted).

At a hearing on April 30, 2010, with Mr. Hamlin present via telephone, the court directed that Mr. Hamlin's response to Defendants' Renewed Motion for Summary Judgment be filed on or before May 24, 2010. (*See* Courtroom Minutes/Minute Order (doc. # 113)). As of this date, Mr. Hamlin has not filed any response to Defendants' Motion. Fed. R. Civ. P. 56(e) specifically contemplates the consequences of failing to oppose a summary judgment motion:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided by this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

*See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970) (the burden on the nonmovant to respond arises only if the summary judgment motion is properly "supported" as required by Rule 56(c)), *superseded on other grounds by Celotex Corp v. Catrett*, 477 U.S. 317 (1986). "Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c)." *Murray v. City of Tahlequah, Oklahoma*, 312 F.3d 1196, 1200 (10th Cir. 2002). "If the evidence produced in support of the summary judgment motion does not

meet this burden, summary judgment must be denied even if no opposing evidentiary matter is presented." *Id*. (internal quotation marks and citation omitted). "If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Id*. *See also Barton v. City and County of Denver*, 432 F. Supp. 2d 1178, 1188 (D. Colo. 2006) (although plaintiff's failure to make a substantive response constituted a confession of facts asserted by defendants, it remained incumbent upon the court to make the specific determinations required under Rule 56(c)).

As Mr. Hamlin submitted the AC sworn under penalty of perjury (*see* doc. # 11 at p. 19 of 25), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997). *See also Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) ("Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)."). "Rule 56(e) requires that the affidavit be based on personal knowledge, contain facts which would be admissible at trial, and show that the affiant is competent to testify on the matters stated therein." *Conaway*, 853 F.2d at 792. Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that 'conclusory allegations

without specific supporting facts have no probative value.' " *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).  "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway*, 853 F.2d at 792-93.  The court must determine whether Mr. Hamlin has met his burden of presenting specific facts to overcome Defendants' Motion.

III.    Analysis

A.    Claim One

Mr. Hamlin alleges that Defendants Robinette and Trujillo denied his constitutional right to practice his religion due to their failure to post notice of Wiccan services according to Colorado Department of Corrections ("CDOC") Administrative Regulations on February 7, 2006, March 3, 2006, March 20, 2006, May 1, 2006, November 2006, January 2007, and March of 2007.  (*See* AC (doc. # 11) at ¶¶ 6, 32-35).  Defendants argue that Mr. Hamlin's allegations fail to state and the evidence fails to show a violation under either the First Amendment or RLUIPA.

"It is well-settled that '[i]nmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). "Yet such protections are not without reasonable limitations." *Kay*, 500 F.3d at 1218.  "The Supreme Court has cautioned

8

that prison inmates are also subject to the 'necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Kay*, 500 F.3d at 1218 (quoting *O'Lone*, 482 U.S. at 348). *See also Overton v. Bazzeta*, 539 U.S. 126, 131 (2003) ("An inmate does not retain rights inconsistent with proper incarceration."). "Accordingly, the Court has held that a prison regulation imping[ing] on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Kay*, 500 F.3d at 1218 (internal quotation marks and citation omitted). *See also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("What constitutes a reasonable opportunity is determined in reference to legitimate penological objectives.") (internal quotation marks and citation omitted); *Hammons v. Saffle*, 348 F.3d 1250, 1254-55 (10th Cir. 2003) ("Inmates' free exercise rights are . . . subject to prison restrictions rationally related to legitimate penological interests."). Prison administrators, not the courts, should "make the difficult judgments concerning institutional operations . . . ." *Turner v. Safley*, 482 U.S. 78, 89 (1987). *See also Shaw v. Murphy*, 532 U.S. 223, 229-30 (2001) (in the First Amendment context "some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system'") (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

"Thus, in order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry." *Kay*, 500 F.3d at 1218. "First, the prisoner-plaintiff must first [sic] show that a prison regulation 'substantially burdened . . . sincerely-held religious beliefs.'" *Kay*, 500 F.3d at 1218 (quoting *Boles v. Neet*, 486

9

F.3d 1177, 1182 (10th Cir. 2007)). "Second, prison officials-defendants may 'identif[y] the legitimate penological interests that justif[ied] the impinging conduct.'" *Kay*, 500 F.3d at 1218 (quoting *Boles*, 486 F.3d at 1182). "The burden then returns to the prisoner to 'show that these articulated concerns were irrational.' " *Kay*, 500 F.3d at 1219 n. 2 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006)).

> "At that point, courts balance the factors set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), to determine the reasonableness of the regulation: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Kay*, 500 F.3d at 1219 (citation omitted).

To proceed with his RLUIPA claim, Mr. Hamlin "must demonstrate he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government."

*Abdulhaseeb*, 600 F.3d at 1312 (citations omitted).

> [A] religious exercise is substantially burdened under [RLUIPA] when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Abdulhaseeb*, 600 F.3d at 1315 (citations omitted). If Mr. Hamlin fails to demonstrate a

substantial burden, the inquiry ends. Even if Mr. Hamlin meets the substantial burden test, "it does not necessarily follow that [he] has established a RLUIPA violation." *Abdulhaseeb*, 600 F.3d at 1318. "Rather, the burden of proof shifts to the Defendants to show the substantial burden results from a compelling governmental interest and that the government has employed the least restrictive means of accomplishing its interest." *Abdulhaseeb*, 600 F.3d at 1318 (internal quotation marks and citation omitted).

First, to the extent that Mr. Hamlin alleges violation of his constitutional rights based on Defendants' failure to comply with CDOC Administrative Regulations regarding posting of notices for services, violation of a prison regulation does not state a constitutional claim under § 1983. *See Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) ("failure to adhere to administrative regulations does not equate to a constitutional violation"). *See also Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("[t]o the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, . . . he has stated no cognizable claim under § 1983") (citations omitted).

Second, the evidence indicates that written notices specifically naming Mr. Hamlin were posted and that postings and notification were sent over the television titler device at FLCF. (*See* Affidavit of Curtis Robinette, Defendants' Exhibit A to Motion (doc. # 115-1) at pp. 3 of 114, ¶¶7-9; Exhibit A-4 (doc. # 115-1 at pp. 10-89 of 114); Exhibit A-5 (doc. # 115-1 at pp. 90-99 of 114); Exhibit A-6 (doc. # 115-1 at pp. 100-09 of 114)). Mr. Hamlin has alleged that Defendants failed to post notices for services for Imbolc Sabat and the Full Moon Rite on February 7, 2006 and for the Full Moon Rite on

March 3, 2006.  (*See* AC (doc. # 11) at ¶ 6).  The CDOC's calendar indicates that Imbolc Sabat was on February 2, 2006 and the Full Moon Rite was on February 13, 2006 and March 14, 2006.  (*See* doc. # 115-1 at pp. 31, 56, 91 of 114).  Mr. Hamlin has not presented any evidence regarding the significance of the other dates he alleges in the AC.  Defendants have also presented evidence that notices were posted on March 6, 2006 for Ostara Sabat on March 20, 2006, on April 27, 2006 for Beltane Sabat on May 1, 2006, on October 23, 2006 for the Full Moon Rite on November 5, 2006, on December 26, 2006 for the Full Moon Rite on January 3, 2007, and on February 27, 2007 for the Full Moon Rite on March 3, 2007.  (*See* doc. # 115-1 at pp. 2-3, 33, 58, 82, 90, 92-95, 100, 102, 105-06 of 114).  Mr. Hamlin has not refuted Defendants' evidence that the notices were posted.  The court concludes that Mr. Hamlin does not state or establish a violation of either the First Amendment or RLUIPA in Claim One.

B.    Claim Three

Mr. Hamlin alleges that Defendant Trujillo has led "Mr. Hamlin to firmly believe he will be retaliated against for practicing his religion with other Wicca Members" by subjecting the Wicca Faith Group to strip search and drug testing.  (*See* AC (doc. # 11) at ¶¶ 81-87).  Mr. Hamlin makes no allegations in Claim Three regarding any other Defendants.  As noted above, in order to establish a constitutional violation of his right to free exercise of religion, the plaintiff bears the burden of demonstrating that the restriction substantially burdened his sincerely-held religious beliefs.  *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007).

This claim lacks evidentiary support.  While Defendant Trujillo had two offenders

searched and drug screened because he detected an odor of marijuana immediately following a Wicca service, Mr. Hamlin was not at the service and was not searched or tested. (*See* Affidavit of Albert Trujillo, Exhibit B to Defendants' Motion (doc. # 115-2 at ¶¶ 6-7). No searches or drug tests of Wicca Faith Group members have since occurred. (*See id.*). Thus, Mr. Hamlin fails to establish a substantial burden on his religious practices.

Further, verbal harassment or threats, without some reinforcing act accompanying them, fail to state a constitutional claim. *Maclean v. Secor*, 876 F. Supp. 695, 699 (E.D. Pa. 1995) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) ("Verbal harassment or abuse of the sort alleged in this case [sheriff threatened to hang prisoner] is not sufficient to state a constitutional deprivation under 42 U.S..C. § 1983.")). Finally, Mr. Hamlin's allegations are conclusory. In order to state a valid claim of retaliation, a plaintiff must "allege specific facts showing retaliation [on account] of the exercise of the prisoner's constitutional rights," *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990), and "prove that 'but for' the retaliatory motive, the incidents to which [the inmate] refers, . . . would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990). Mr. Hamlin has not alleged or produced evidence that but for retaliatory motivation the complained-of conduct would not have occurred. Nor has Mr. Hamlin alleged or demonstrated a chronology of events from which retaliation may plausibly be inferred. The court concludes that Mr. Hamlin does not state or establish a violation of either the First Amendment or RLUIPA in Claim Three.

C.     Claim Four

Mr. Hamlin alleges that Defendants Trujillo and Robinette denied his constitutional right to practice his religion by denying ritual tools and supplies. (*See* AC (doc. # 11) at ¶¶ 88-102).

Mr. Hamlin alleges that he was not provided with a wand.  (*See* doc. # 11 at ¶ 93 ("Mr. Hamlin's ability to perfect his Wicca practice is obstructed by CDOC not permitting him access to obtain a wand for his use."); *see also* ¶¶ 11 ("[t]he wand Mr. Hamlin is required to purchase from CDOC . . . is not acceptable. . . CDOC does not give Mr. Hamlin the ability to purchase wands made of rowan, ash, willow, oak, maple, etc.")). Prison regulations permit Mr. Hamlin to possess a wand.  (*See* doc. # 115-1 at pp. 30, 34, 55, 59, 81, 89 of 114).  However, prisons do not have an affirmative duty to provide religious materials or other religious articles free of charge to inmates.  *See Cutter v. Wilkinson*, 544 U.S. 709, 720 n. 8 (2005) ("RLUIPA does not require a State to pay for an inmate's devotional accessories.").  RLUIPA does not require governments to affirmatively subsidize religion.  *Abdulhaseeb*, 600 F.3d at 1321 (citing *Mayweathers v. Newland*, 314 F.3d 1062, 1068-69 (9th Cir.2002) (holding RLUIPA constitutional under the Establishment Clause because "[i]t does not impose affirmative duties on states that would require them to facilitate or subsidize the exercise of religion")).  While Mr. Hamlin's preference is for a different type of wand, he does not present evidence suggesting that his religious practice is substantially burdened by type of the wand that is available for purchase in the prison canteen.  Mr. Hamlin has not shown that being denied the type of wand of his choosing caused him to be subjected to a deprivation

that significantly hampered his religious practice. *See Smith v. Allen*, 502 F.3d 1255, 1277 (11th Cir. 2007) ("to constitute a substantial burden under RLUIPA, the governmental action must significantly hamper one's religious practice"). As to his allegations that he was denied a proper wand, Mr. Hamlin has failed to demonstrate a violation of the First Amendment or RLUIPA because he has not shown that the practice of his religious beliefs was substantially burdened.

Mr. Hamlin also alleges that he was not permitted to chalk his circle on an indoor carpet floor, but was instead told to chalk a circle on a large piece of cardboard. (*See* doc. # 11 at ¶¶ 89-91). FLCF provides space and time for services for all religious preferences and the facility needs to keep the rooms neutral for all uses. (*See* doc. # 115-2 at ¶ 13). Inmates who were participating in the Wicca celebration were not allowed to use chalk to mark the carpet because chalk was difficult to remove from the carpet, and other religious services were planned to be held in the same room. (*See id*. at ¶ 10). The Wicca group was provided with a large piece of cardboard so that they could draw a chalk circle on the cardboard rather than drawing it on the carpet. (*See id*. at ¶ 11).

Mr. Hamlin must show that Defendants' conduct imposed a substantial burden on his religious practice. *Abdulhaseeb*, 600 F.3d at 1312-15 (applying RLUIPA); *Gallagher v. Shelton*, 587 F.3d 1069-70 (applying Free Exercise Clause). "[A]t a minimum the substantial burden test requires . . . more than an inconvenience to one's religious practice." *Abdulhaseeb*, 600 F.3d at 1316. *See also Smith v. Allen*, 502 F.3d 1255, 1277 (11th Cir. 2007) ("We have previously defined a substantial burden as being

significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. . . [I]n order to constitute a substantial burden on religious practice, the government's action must be more than . . . incidental and must place more than an inconvenience on religious exercise.") (internal quotation marks and citation omitted).

Mr. Hamlin has not presented evidence that casting a circle with chalk is significant enough to Wiccan practitioners that any limitation necessarily imposed a substantial burden on his religious exercise.  *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (a substantial burden is one that bears a direct, primary and fundamental responsibility for rendering religious exercise effectively impracticable).  The evidence shows no more than an inconvenience.  All that is required is a reasonable opportunity to practice one's religion and the evidence does not support a claim that Defendants denied Mr. Hamlin such an opportunity.  The evidence does not establish that the limitation that the Wiccans cast their circle with chalk on a large piece of cardboard rather than the carpet substantially burdened Mr. Hamlin's exercise of his religion.

Mr. Hamlin further alleges that Wiccans were denied charcoal for two services, on "June 10" and "June 20th."  (*See* doc. # 11 at ¶ 97).  In 2007, a change in policy occurred regarding inmates' possession of charcoal.  The Swift-Lite Charcoal Tablets ordered from the religious catalog had been on the canteen list and inmates could take them to their cells.  (*See* doc. # 115-1 at p. 4 of 114, ¶ 12).  In June 2007, Swift-Lite Charcoal Tablets ordered from the religious catalog were determined to be contraband and were not to be allowed in the possession of inmates due to the incendiary

capabilities. (*See id*. at pp. 4, 109-112 of 114). The charcoal tablets were in the individual inmates' possession for use in the June 10, 2007 service. (*See id*. at p. 4 of 114, ¶ 13). On June 11, 2007, the Warden requested that Defendant Robinette investigate which inmates had charcoal tablets in their possession. (*See id*. at p. 4 of 114, ¶ 11). Mr. Hamlin was not one of the two inmates who had charcoal tablets. (*See id*. at p. 4 of 114, ¶ 11). The charcoal tablets were confiscated from the two inmates on June 11, 2007. (*See id*. at p. 4 of 114, ¶ 13). The inmates donated the tablets to the Wicca Faith Group for use at scheduled services. (*See id*. at pp. 4, 112 of 114). The charcoal tablets are an allowable faith group item and are required to be stored with other faith group property. (*See id*. at p. 4 of 114, ¶ 12). A locked storage area was established to store Wicca Faith Group property. (*See id*. at p. 4, ¶ 14; pp.111-12 of 114).

The evidence indicates that the charcoal tablets were in the possession of individual Wiccan Faith Group members for use in the June 10, 2007 service. (*See* doc. # 115-1 at p. 4 of 114, ¶ 13). Mr. Hamlin's allegation that the Wiccan Faith Group was denied the charcoal for the June 20th service fails to state a claim. This single isolated incident is not sufficient to implicate the Constitution or substantially burden Mr. Hamlin's exercise of his religion. *See White v. Glantz*, 986 F.2d 1431 (10th Cir. 1993) (finding that an isolated occurrence did not violate a Muslim inmate's First Amendment rights). *See also Hankins v. NYS Dept. of Correctional Services*, 2008 WL 2019655 * 6 (N.D.N.Y. 2008) ("Courts have found that causing a prisoner to miss one religious

service does not constitute a violation of RLUIPA.").[2]  Mr. Hamlin does not argue or demonstrate that the deprivation of charcoal on one occasion on June 20, 2007 prevented him from exercising his religious beliefs.[3]

In sum, Mr. Hamlin has not established a violation of either the First Amendment or RLUIPA in Claim Four.

D.      Claim Five

Mr. Hamlin alleges that due to prohibitions on burning "herbs/oils to cleanse the service/worship area," the Wicca Faith Group did not have access to the indoor worship area during certain periods of inclement weather.  (*See* AC (doc. # 11) at ¶¶ 26, 103-110).  Mr. Hamlin alleges that inclement weather "coupled with Mr. Hamlin[']s inability to tolerate cold, caused Mr. Hamlin to miss the Full Moon Esbats for November 2006, December 2006, January 2006, February 2006, and March 2006, the Yule Sabat in December, the Imbolc Sabat in February, and the Wicca monthly study service from November 2006 to March 2007."  (*See* AC (doc. # 11) at ¶ 109).  Mr. Hamlin alleges that "[n]ot having access to an environmentally safe indoor Wiccan Service area, has denied Mr. Hamlin the ability to practice his religion."  (*See* AC (doc. # 11) at ¶ 110).

Again, Mr. Hamlin must show that Defendants' conduct imposed a substantial burden on his religious practice.  *Abdulhaseeb*, 600 F.3d at 1312-15;  *Gallagher v.*

---

[2]    Copies of unpublished decisions cited are attached to this Recommendation.

[3]    Mr. Hamlin has not presented any allegations or evidence of the significance of candles and quarters, such that any limitation on those items imposed a substantial burden on his religious exercise.

*Shelton*, 587 F.3d at 1069-70. FLCF provides a room designated for religious services to be used by all faith groups. (*See* doc. # 115-2 at p. 3 of 9, ¶ 13). FLCF does not have sufficient rooms and space to have separate facilities for each religion. (*See id*.). AR 800-01 provides that the Wiccan Faith Group prefers to gather outdoors for Holy Day observances, but that indoor observances are also appropriate. (*See* doc. # 115-1 at pp. 3, 30, 55, 81, of 114; *see also* p. 5 of 114, ¶ 18). When Holy Day observances take place in cold weather, the Shift Commander had the authority to move the group inside. (*See* doc. # 115-1 at p. 3 of 114, ¶ 19). "When the group is moved inside for the Holy Day observance, there would be no burning of herbs allowed because of the prohibition on burning in state buildings." (*See* doc. # 115-1 at p. 5 of 114, ¶ 19).

Mr. Hamlin has not refuted the evidence that Wiccan Faith Group observances were permitted to take place indoors in inclement weather, *albeit* without burning any herbs or oils. To the extent that Mr. Hamlin alleges that he missed several Wiccan observances in 2006 and 2007, he alleges nothing more than occasional and insubstantial inconveniences to his practice of his religion due to the weather, the ban on burning indoors, and his "inability to tolerate cold." There were numerous other Wiccan observances available to him in 2006 and 2007. (*See* doc. # 115-1 at pp. 31-33, 56-58, 82-87 of 114). "In addition to the services provided for in AR 800-01, FLCF also provides two hours per month for Wiccan participants to gather." (*See* doc. # 115-1 at p. 3 of 114, ¶ 10). Mr. Hamlin's allegations do not support and he has not presented any evidence to establish a substantial burden on his religious practice. *See, e.g., Smith v. Graziano*, 2010 WL 1330019 at * 9 (N.D.N.Y. 2010) ("[T]he cancellation of

two religious services is a *de minimis*, or insubstantial, burden on an inmate's ability to freely exercise his religion.") (citations omitted).  Mr. Hamlin has not alleged or demonstrated that the Wiccan observances did not take place, only that burning was not permitted at indoor observances and that he did not attend some outdoor observances due to cold weather.  The court concludes that Mr. Hamlin has not established a violation of either the First Amendment or RLUIPA in Claim Five.

E.      Claim for Injunctive Relief

Defendants argue that Mr. Hamlin's claim for injunctive relief is moot because he was transferred from FLCF to BCCF and is no longer under the custody or control of any of the Defendants.

> Article III delimits the jurisdiction of federal courts, allowing us to consider only actual cases or controversies.  [A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.  In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world. When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot.

*Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (internal quotation marks and citations omitted).  Because Mr. Hamlin has been transferred away from FLCF, "it appears that . . . injunctive relief will not be available" against the FLCF Defendants.  *Abdulhaseeb*, 600 F.3d at 1311 (citations omitted).  Mr. Hamlin's claim for injunctive relief is moot.

F.      Qualified Immunity

Defendants assert the defense of qualified immunity.  In an action brought under § 1983, the doctrine of qualified immunity protects government officials who perform discretionary government functions from liability for civil damages and the obligation to defend the action.  *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997) ("officials performing discretionary function[s], generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "When the defense of qualified immunity is raised in a summary judgment motion, the Plaintiff bears the burden to show both that each Defendant's action violated a constitutional right, and that that right was clearly established at the time of the conduct."  *Murphy v. Gardner*, 413 F. Supp. 2d 1156, 1162 (D. Colo. 2006).  Although a plaintiff must ultimately establish both elements to avoid application of the doctrine, the court has discretion to consider the elements in any order.  *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009);  *Green v. Post*, 574 F.3d 1294, 1299 (10th Cir. 2009).

As to Mr. Hamlin's constitutional claims, because the court has concluded in this Recommendation that the evidence, even viewed in the light most favorable to Mr. Hamlin, is insufficient to establish that Defendants violated his constitutional rights, Defendants in their individual capacities are entitled to qualified immunity from Mr. Hamlin's claims brought pursuant to § 1983.  *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional

right).

Because the court previously concluded that RLUIPA does not permit a claim against Defendants in their individual capacities (*see* doc. # 54), the court need not address the secondary question of whether they would be entitled to a defense of qualified immunity as to the RLUIPA claim. *See Sossamon*, 560 F.3d at 327 ("if no private right of action exists against the defendants in their individual capacities, then a qualified immunity . . . analysis would be unnecessary."); *Smith v. Allen*, 502 F.3d at 1275 (stating that the qualified immunity defense only applies when the defendant is sued individually)).

Accordingly, IT IS ORDERED that "Defendants' Renewed Motion for Summary Judgment" (filed April 30, 2010 (doc. # 115) is GRANTED. Judgment shall enter on all remaining claims in the Amended Complaint (doc. # 11) in favor of Defendants and against Plaintiff.

DATED at Denver, Colorado, this 12th day of July, 2010.

BY THE COURT:


___s/Craig B. Shaffer_____
United States Magistrate Judge